# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 19-11375-tmd |
| 360 MORTGAGE GROUP, LLC, | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |

## NOTICE OF FILING
## DECLARATION OF ANDREW WEISSMALIK IN SUPPORT OF THE DEBTOR'S
## CHAPTER 11 PETITION AND FIRST-DAY MOTIONS

The Declaration of Andrew WeissMalik in Support of the Debtor's Chapter 11 Petition and First-Day Motions is attached hereto.

October 14, 2019

HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456 (main)
(512) 479-1101 (fax)

By: */s/ Lynn H. Butler*
    Lynn H. Butler
    Texas Bar No. 03527350
    lynn.butler@huschblackwell.com
    Jameson J. Watts
    Texas Bar No. 24079552
    jameson.watts@huschblackwell.com

HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6100 (main)
(214) 999-6170 (fax)

    Buffey E. Klein
    Texas Bar No. 24032515
    buffey.klein@huschblackwell.com

**PROPOSED COUNSEL FOR THE DEBTOR**

## CERTIFICATE OF SERVICE

       I hereby certify that on October 14, 2019, a true and correct copy of the foregoing pleading is being served via this Court's ECF notification system to all parties registered to receive such notice as listed below and that on October 15, 2019, a true and correct copy of the foregoing will be sent to all parties on the Creditor Matrix.

                                                  /s/ *Lynn Hamilton Butler*
                                                  Lynn Hamilton Butler

**19-11375-tmd Notice will be electronically mailed to:**

Lynn H. Butler on behalf of Debtor 360 Mortgage Group, LLC
Husch Blackwell LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
lynn.butler@huschblackwell.com, penny.keller@huschblackwell.com;
christine.deacon@huschblackwell.com; elizabeth-spivey-5378@ecf.pacerpro.com

Quilling, Selander, Lownds, Winslett & Moser, P.C.
c/o Hudson M. Jobe
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
hjobe@qslwm.com, nchancellor@qslwm.com

United States Trustee - AU12
903 San Jacinto Boulevard, Suite 230
Austin, Texas 78701
ustpregion07.au.ecf@usdoj.gov

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| | § | CASE NO. 19-11375-tmd |
| 360 MORTGAGE GROUP, LLC, | § § | |
| | § | CHAPTER 11 |
| Debtor. | § § | |

## DECLARATION OF ANDREW WEISSMALIK IN SUPPORT OF THE DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS

Andrew WeissMalik declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1. My name is Andrew WeissMalik and I am of sound mind and capable of making this Declaration. I have personal knowledge of the facts stated herein and they are true and correct.

2. I am the Chief Operating Officer and Manager of Debtor 360 Mortgage Group, LLC (the "Debtor" or "360 Mortgage"). In this capacity, I am generally familiar with the Debtor's operations, businesses, financial affairs, and books and records.

3. On October 7, 2019, the Debtor voluntarily commenced this case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors committee has been appointed in the Chapter 11 Case.

4. I submit this declaration (the "First Day Declaration") to provide an overview of the Debtor and the Chapter 11 Case and to supplement the Debtor's chapter 11 petition and "first day" motions and applications (each, a "First Day Motion," and collectively, the "First Day

Motions"). Except as otherwise indicated herein, all facts set forth in this First Day Declaration are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents, information supplied to me by other members of the Debtor's management teams or the Debtor's advisors, and/or my opinion based upon my knowledge and experience and information I have reviewed concerning the Debtor's operations and financial condition. I am authorized to submit this First Day Declaration on behalf of the Debtor and, if called upon to testify, I could and would testify competently to the facts set forth herein.

5. The purpose of this First Day Declaration is to familiarize the Court with the Debtor and the relief it seeks in the First Day Motions. To that end, this First Day Declaration is organized as follows:

### I. THE DEBTOR'S BUSINESS AND EVENTS LEADING TO BANKRUPTCY

6. The Debtor began its operations in 2007, focusing on mortgage loan originations. In late 2012, the Debtor decided to expand its business model to focus on origination and acquisition of mortgage loans and the associated servicing rights that were eligible for pooling through the Government National Mortgage Association ("GNMA") and its mortgage-backed securities program. In October 2011, the Debtor obtained issuer status with GNMA. The company could then package certain federally-insured or guaranteed mortgages into pools which are then sold to both public and private investors. GNMA guaranteed that the investors in these mortgage pools would receive timely payment of principle and interest on those securities. As a result, GNMA's guarantee was critical to the value of the securities and to the Debtor's business.

7. Though relatively small, the Debtor became recognized for its innovation in the mortgage space and constantly maintained numerous top tier ratings and scores. In 2018, the

Debtor was rated by the U.S. Department of Housing and Urban Development ("HUD") as a Tier One Servicer, the highest category rating available to a HUD approved servicer. In addition, the Debtor had achieved the highest servicer rating given by the Federal National Mortgage Association, a perfect score of 100 out of 100. The Debtor had the highest ratings achievable within the industry.

8. In 2018, after approximately 10 years of hard work and innovation, the members of the Debtor initiated a series of transactions to sell a substantial portion of the Debtor's assets and subsequently capitalize on the reputational value the company had accumulated. Indeed, the Debtor was an attractive acquisition target due to its GNMA issuer status and extraordinary ratings in the industry. This monetization strategy was to be executed in three parts. The first part of the Debtor's monetization strategy was to sell the majority of its servicing rights to a third party. The second part of the monetization strategy developed by the Debtor's members was to sell the Debtor's remaining operation, production, and technology. The third and final part of the Debtor's intended monetization strategy was to license the Debtor's IP software and talented pool of employees.

9. Unfortunately, during this process, a dispute arose between the Debtor and certain counter-parties. These disputes are the subject of litigation in federal and state courts of New York. Also during this time period, GNMA, the Debtor's most critical business relationship, terminated the Debtor's rights to participate in GNMA's programs. After the termination the Debtor spent over six months attempting to reinvent itself and find a profitable path forward for the business. After failing to find a profitable path forward and given the unrecoverable loss of the GNMA rights, the Debtor began an orderly wind-down of its business. However, a New York state court very recently entered orders attempting to limit the Debtor's use of its property.

**DECLARATION OF ANDREW WEISSMALIK IN SUPPORT OF**
**THE DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS**     **PAGE 3**
DocID: 4820-1076-5481.1

In order to continue the wind-down in a controlled, methodical manner, the present Chapter 11 case was filed to allow the Debtor to continue its wind-down process in an orderly manner under applicable law.

10. The Debtor intends to use the breathing spell provided by the filing of this bankruptcy case to provide for the orderly liquidation of claims against the Debtor's bankruptcy estate. The Debtor's plan is to file a plan of liquidation that provides the maximum recovery for Debtor's creditors and avoids further deterioration of Debtor's assets through unsustainable operating losses.

## II. FIRST DAY MOTIONS

11. The Debtor has filed a number of First Day Motions. I believe that, among other things, the relief requested in the First Day Motions is necessary to enable the Debtor to continue with minimal disruption during the pendency of this Chapter 11 Case, thereby preserving and maximizing the value of the Debtor's estate. A description of the relief requested and the facts supporting each of the First Day Motions is set forth below. I have reviewed each of the First Day Motions, and the facts set forth therein are true and correct to the best of my knowledge and belief with appropriate reliance on corporate officers and advisors.

**A. Motion for Entry of an Order Authorizing the Debtor to (I) Pay Pre-Petition Wages (II) Granting Other Related Relief.**

12. As of the Petition Date, the Debtor employed 7 employees – 1 staff member ("Staff") and six executives ("Executives") (Staff and Executives collectively, the "Employees"). The Employees receive compensation in the form of, among other things, wages, salaries, reimbursement of expenses, including vacation, health insurance, severance, and sick leave pay earned by the Employees (collectively, "Employee Obligations"). As a fiduciary to the creditors and equity holders of the bankruptcy estate, the Debtor is obligated to protect and preserve the

value of the bankruptcy estate. Ensuring that the Employees are timely paid and remain on the job is essential to the preservation of the value of the bankruptcy estate and the ability of the Debtor to maximize the value of the bankruptcy estate in a fashion that is best for all interested parties. Therefore, payment of the Employee Obligations to maintain operations is the most practical mechanism for accomplishing the goals of maximizing the value of Debtor's assets.

13. Accordingly, payment of the Employee Obligations and continuation of all Employee benefit plans and policies are equally vital to the health and welfare of the Employees of the Debtor and also the Debtor's ability to maximize the value of its bankruptcy estate without imposing possible immediate and irreparable harm to the Debtor's valued Employees or to the bankruptcy estate.

14. The requested relief is necessary to enable the Debtor to fulfill its duties as debtor-in-possession and to maximize the value of the bankruptcy estate.

15. Further, to avoid any unnecessary complications for the employees, the Debtor respectfully requests that the Court include, authorization for and a directive to the banks and financial institutions of the Debtor to process, honor, receive, and pay all checks and fund transfer requests made by the Debtor pertaining to its payroll or to the Employee Obligations set forth in Debtor's Wage Motion.

**B. Motion for Entry of an Order Authorizing the Debtor to (I) To Enter Into Agreement for Purchase and Sale of Mortgage Servicing Rights (II) Allow Sale and (III) Granting Other Related Relief**

14. Prior to the filing of the bankruptcy, the Debtor negotiated an Agreement for Purchase and Sale of Mortgage Servicing Rights to sell mortgage servicing rights to approximately $7,000,000 of unpaid principal balance on mortgage notes owned by Freddie Mac to Texas Bank Financial, d/b/a Texas Bank Mortgage Company, for the consideration of the aggregate outstanding principal balance of

such Mortgage Loans, as of the close of business on the Sale Date, multiplied by 0.270% (27 Basis Points). This sale is anticipated to net the Debtor estate approximately $17,000.00.

15. An accurate copy of the Agreement for Purchase and Sale of Mortgage Servicing Rights is attached to the filed Motion as **Exhibit A**.

16. Upon the closing of the sale to Texas Bank Financial, the Debtor will place the proceeds in a segregated account pending further court order.

17. No creditors hold security interests in the assets to be sold by this Motion.

18. The Debtor seeks the approval of the sale under Bankruptcy Code § 363(f), with such sale free and clear of any interest in the property to be sold of any entity other than the estate, including any liens or claims. The sale represents the culmination of arm's length negotiations between two unrelated parties. Based upon the sound business judgment of the Debtor's management, this sale is appropriate under the circumstances.

19. In that no creditor holds a security interest in the assets to be sold by this Motion, the Debtor asserts that expedited consideration of the sale is appropriate, especially given the segregation of the sale proceeds pending further order of the Court.

### III. CONCLUSION

20. 1To minimize any loss of value to the Debtor's remaining assets, the Debtor's immediate objective is to continue its wind down efforts following the commencement of this Chapter 11 Case with as little interruption to the Debtor as possible. If the Court grants the relief requested in the First Day Motions, the prospect of achieving these objectives–to the maximum benefit of the Debtor's estates, creditors and parties in interest–will be substantially enhanced. I
respectfully request that all of the relief requested in the First Day Motions, and such other further relief as may be just and proper, be granted

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 11, 2019.

_____
ANDREW WEISSMALIK

**DECLARATION OF ANDREW WEISSMALIK IN SUPPORT OF
THE DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS**
DocID: 4820-1076-5481.1

**PAGE 7**